# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR CASTRO, | 1:07-CV-00871 AWI GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| DERRAL ADAMS, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, after being convicted on February 17, 1982, by jury trial of second degree murder in violation of Cal. Penal Code § 187, Hon. Frank J. Creede, Jr., presiding. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit A. Enhancing allegations that Petitioner had suffered two prior convictions were found to be true. Id. On March 17, 1982, he was sentenced to serve an indeterminate term of 20 years to life with the possibility of parole. Id. His minimum eligible parole date was July 9,

1

1996. See Answer, Exhibit D at 1.

On September 7, 2005, a fifth subsequent parole suitability hearing was held before the California Board of Parole Hearings (hereinafter "Board"). Id. Petitioner participated in the hearing and was represented by counsel. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for three years. Id. at 106, 110.

Petitioner then sought relief in the state courts. He filed a petition for writ of habeas corpus on November 21, 2005, in the Kings County Superior Court. See Answer, Exhibit E. The superior court denied the petition on January 4, 2006, finding some evidence supported the Board's decision. See Answer, Exhibit F. He then filed a habeas petition in the California Court of Appeal, Fifth Appellate District, on April 18, 2006. See Answer, Exhibit G. The petition was denied on July 20, 2006. See Answer, Exhibit H. On August 31, 2006, Petitioner filed a petition for review in the California Supreme Court. See Answer, Exhibit I. The petition was denied without comment on April 11, 2007. See Answer, Exhibit J.

Petitioner filed the instant petition for writ of habeas corpus in this Court on June 18, 2007. He challenges the 2005 decision of the Board denying parole. He contends the Board's decision was not supported by "some evidence." He claims the facts did not support the Board's findings with respect to the circumstances tending to show unsuitability. He claims the Board's denial was based on unchanging circumstances of the offense and prior criminal history. He also claims the Board's multi-year denial was made in violation of state law. Respondent filed an answer to the petition on November 5, 2007, and Petitioner filed a traverse on November 21, 2007.

**FACTUAL BACKGROUND**[1]

During the evening hours of September 23, 1981, Petitioner and his three companions, Kenny Price, Stephen Svetlik, and a large, heavy-set Mexican male, were drinking beer at the "Hip Hugger," a topless beer and wine bar located in Fresno, California. During the course of the evening, a confrontation arose between Petitioner and his companions and another group of

---

[1] The factual summary is derived from the statement of facts set forth by the Fifth DCA in its opinion of February 6, 2004, and is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). See Answer, Exhibit C.

people in the bar. One of the members in the other group, Steve Dardin, refused to return a pool ball which Petitioner's group was using to play pool. After that matter quieted down, Petitioner and his companions sat at the bar and physically harassed the "girls" as they walked up to the bar. As Petitioner and his companions were leaving the bar (pursuant to the bartender's request), Steve Dardin, who was using the telephone located by the bar, made some disparaging remarks and an obscene gesture directed toward Petitioner and his companions. After apparently exiting, Petitioner and his larger-sized, Mexican companion returned almost immediately and threw glasses, ash trays and bar stools toward Steve and the general area of the bar. These "missiles" succeeded in knocking over the cash register and injuring one of the persons by the bar.

Meanwhile, the victim, Hugh Houston, was standing to one side, apparently trying to stay out of the matter, although he appeared to want to leave the bar too. As he appeared to do so, Houston was confronted at the doorway by the larger, heavier Mexican male. In response to that, Houston sprayed him with mace. Houston then turned and ran back down the entrance hallway toward the bar with Petitioner, who had reentered through the entry door in pursuit of him. Petitioner grabbed the victim, momentarily scuffled and, while standing slightly behind the victim, struck the victim twice in the chest with his hand. During this attack, the witnesses noticed that Petitioner was holding a knife or, as one witness described it, Petitioner was holding a shiny, metallic object in his hand when he struck the second blow.

The victim staggered for a few feet and then collapsed to the floor. Petitioner turned away and rapidly walked out of the bar. He immediately got in the car of one of his companions and they drove away.

During the ensuing search of the area, the police found, in a closed condition, a blood-stained clasp knife lying in the street approximately 100 feet from the front entrance of the Hip Hugger Bar.

Hugh Houston died as a result of two stab wounds to the chest, one of which punctured his lung and the other penetrated his heart. These wounds were consistent with what could have been inflicted by the bloody clasp knife found by the police.

**DISCUSSION**

I.       Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

4

*quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state

court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

As noted above, Petitioner's claims were presented in a petition for writ of habeas corpus to the Kings County Superior Court. See Answer, Exhibit E. The superior court denied the claims in a reasoned opinion. See Answer, Exhibit F. Petitioner then presented his claims to the appellate court and to the California Supreme Court. Both petitions were summarily denied. See Answer, Exhibits G-J. The California Supreme Court, by its "silent order" denying review of the superior court's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the superior court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is guaranteed the following process: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id. It is clear from the record these three guarantees were given. Petitioner received notice of the hearing, he was heard at the hearing and he was told why he did not qualify for parole.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of *good time* does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the

record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added). The Ninth Circuit has held that this same standard also extends to parole determinations. Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations.

To determine whether 'some evidence' supports the state court decision, the test is not whether some evidence supports the reasons cited for denying parole, "but whether some evidence indicates a parolee's release unreasonably endangers public safety." In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

In denying parole in this case, the Board provided several reasons for its decision: 1) The nature and gravity of the commitment offense; 2) Escalating pattern of criminal conduct prior to

7

the offense; 3) Unstable social history and extensive drug use; and 4) Continuing criminal behavior while incarcerated. See Answer, Exhibit D at 106-109. Petitioner argues there is no evidence to support the finding that he currently poses an unreasonable risk of danger to society if released, because the Board continues to use stale and unchanging factors of the commitment offense. Review of the Board's decision reveals the state court decision approving the Board's determination of unsuitability was not unreasonable.

The first factor mentioned by the Board in its decision was the commitment offense itself, and the Board determined the offense was committed in an especially heinous, atrocious and cruel manner. Pursuant to § 2402(c)(1)(B), the Board found the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder. See Answer, Exhibit D at 106. In support of the finding, the Board noted the facts as set forth by the appellate court, that Petitioner pursued a fleeing individual down a hallway, caught him, and then proceeded to stab him in the chest, delivering fatal blows to the heart and lung. Id. The Board also found that the motive for the crime was very trivial in relationship to the offense. Id. at 106-107. In support, the Board noted from the appellate decision that the victim posed no threat to him, and Petitioner's dispute was with someone other than the victim. Id. at 107.

Petitioner argues the appellate court's rendition of the facts is biased and incomplete, in that the court did not account for the testimony of other witnesses. Petitioner does not dispute that there was evidence which supported the appellate court's recitation of facts, only that there was evidence that also supported his own rendition. He disagreed with the appellate court's rendition and asked that his own recitation be accepted. However, the appellate court's statement of facts is presumed to be correct, 28 U.S.C. §§ 2254(d)(2), (e)(1), and the Board's function is not to retry the case. The Board properly relied on the facts as set forth by the appellate court. The state court reasonably found that there was some evidence in the record supporting the Board's finding.

Next, under § 2402(c)(2), the Board determined Petitioner had an escalating pattern of violent criminal behavior prior to the offense. See Answer, Exhibit D at 108. The Board noted that Petitioner had a criminal rap sheet dating back to 1970 when Petitioner was 15 years old. It

8

was noted that Petitioner had been charged and/or convicted and committed for, *inter alia*: robbery; receiving stolen property; petty theft; auto theft; resisting arrest; battery; disturbing the peace; obstructing a peace officer; and being under the influence of an opiate. Id. at 27-36, 108-109. The Board also found that Petitioner was on parole at the time of the commitment offense. Id. at 109. This finding was well-supported by the evidence.

Under § 2402(c)(6), the Board noted that Petitioner's criminal behavior also extended to his commitment to the California Department of Corrections. Just in 2004, Petitioner incurred a serious rules violation during the most recent review period for mutual combat. See Answer, Exhibit D at 109. The panel also noted that Petitioner had sustained some 29 serious rules violations during his incarceration which included: breaking windows; assaulting staff; destruction of state property; assaulting inmates; conduct; control of marijuana and hashish; and failure to report to work assignments. Id. at 72. Clearly, there was ample evidence to support the Board's finding that Petitioner remained a serious threat to public safety should he be released in light of his continuing criminal behavior.

The Board also found pursuant to § 2402(c)(3) that Petitioner had a history of unstable and social relationships with others. The Board cited Petitioner's extensive drug use and his criminal behavior in support of this finding.

In support of the multi-year denial, the Board noted the above factors and also noted the unfavorable psychological evaluations. In July of 2005, psychologist Lee Kuberski determined that Petitioner's level of dangerousness was average and had increased due to the most recent serious rules violation. Id. at 113-114. Dr. Kuberski noted the report of mutual combat bore a strong similarity to the commitment offense and therefore "represent[s] a fundamental (indiscernible) thinking and seriously draws any question of his self-perception that he no longer (indiscernible) others to control him emotionally. This flaw in his thinking would be addressed in an anger management group." Id. at 114-115. The Board also noted the 2004 psychological report by the same psychologist in which the doctor stated: "A factor of concern is the minimization of responsibility for the life crime and the degree to which the inmate feels justified because there was that provocation by the victim. The inmate does not seem to clearly indicate

1 that the victim's violence towards him does not excuse or justify the (indiscernible) escalating
2 response on his part." Id. at 115. In addition, Petitioner's argument that multi-year denials only
3 apply to individuals who have committed multiple murders is incorrect. As pointed out by
4 Respondent, Cal. Penal Code § 3041.5(b)(2)(B) applies to "any prisoner who has been convicted
5 of murder."

6 The Board then considered various circumstances which tended to show suitability
7 pursuant to § 2402(d). See Answer, Exhibit D at 116. Petitioner had realistic parole plans and
8 marketable skills. Id. He had vocations in the area of upholstery and as a paralegal. Id. He had
9 pursued studies in the Chinese healing arts for the past seven years. Id. at 116-117. He had
10 attended Alcoholics Anonymous meetings. Id. at 117. However, the Board concluded that the
11 nature and gravity of Petitioner's offense, his prior criminal history both in and out of prison, his
12 most recent rules violation, his unstable social history, and his recent psychological evaluations
13 were indicative of a current and serious danger to the public if released. This Court cannot
14 conclude that the state court rejection of Petitioner's claim - that the Board's determination was
15 not supported by some evidence - was unreasonable.

16 Petitioner's claim that the Board improperly relied on stale and immutable factors is
17 clearly without merit. While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-17 (9th
18 Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging
19 factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the
20 rehabilitative goals espoused by the prison system and could result in a due process violation,"
21 this is not the situation here. As discussed above, the Board did not merely consider the
22 underlying offense and the conduct prior to the offense. The Board also considered Petitioner's
23 extensive history of misconduct in prison, most recently in 2004, and his unfavorable
24 psychological reports.

25 **RECOMMENDATION**
26 Based on the foregoing, it is HEREBY RECOMMENDED that:
27   1.   The Petition for Writ of Habeas Corpus be DENIED; and
28   2.   The Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the Objections.  The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**   **June 16, 2008**          /s/ **Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE